IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:19-cv-2965

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

GEORGE S. HARRINGTON,

    Defendant.

## COMPLAINT

Plaintiff United States of America alleges as follows:

1. The United States brings this action to reduce to judgment civil penalty assessments against George S. Harrington, pursuant to 31 U.S.C. § 5321(a)(5). These penalties, commonly known as "FBAR penalties," arise from Mr. Harrington's failure to timely report his financial interest in, or signatory authority over, foreign bank accounts for the 2007, 2008, 2009, and 2010 calendar years, as required under 31 U.S.C. § 5314 and related regulations.

2. The IRS Chief Counsel, a delegate of the Secretary of the Treasury, has authorized this action, which the United States brings at the direction of the Attorney General's delegate, pursuant to 31 U.S.C. § 3711(g)(4)(C).

### Jurisdiction and Venue

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue properly lies in the District of Colorado under 28 U.S.C. §§ 1391(b)(1) and 1395(a).

## The Defendant

5. Defendant George Harrington resides in Grand Junction, Colorado, and was a resident of the United States during the calendar years at issue.

6. Mr. Harrington prepared his own federal tax returns for the 2007 through 2010 years. Beginning as early as 2006, Mr. Harrington also prepared his own Reports of Foreign Bank and Financial Accounts ("FBARs") with respect to a foreign account in New Zealand.

## Foreign Bank or Financial Account Reporting Requirements

7. Federal law requires every resident or citizen of the United States who has a financial interest in, or signatory or other authority over, a bank, securities, or other financial account in a foreign country to report that relationship to the Department of Treasury for each year in which the relationship exists. *See* 31 U.S.C. § 5314(a); 31 C.F.R. § 1010.350(a).

8. To fulfill this requirement, such a U.S. resident or citizen must file with the IRS a "Report of Foreign Bank and Financial Accounts," commonly known as an "FBAR." To report information for all years through 2012, the proper FBAR form was Form TD F 90-22.1.

9. For each of the calendar years at issue in this action, an FBAR was due no later than June 30 of the subsequent calendar year for any year in which the aggregate balance of the foreign financial accounts exceeded $10,000. *See* 31 C.F.R. § 1010.306(c).

10. Any United States resident or citizen who fails to comply with the FBAR reporting requirements may be subject to a civil penalty. For violations involving the willful failure to report an interest in a foreign account, the maximum civil penalty the Department of

Treasury may impose for each violation is the greater of $100,000 or 50% of the balance in the account at the time of the violation. *See* 31 U.S.C. § 5321(a)(5)(C).

11.     This FBAR penalty is subject to interest and additional penalties under 31 U.S.C. § 3717.

**Mr. Harrington's Willful Violations of FBAR Reporting Requirements**

12.     From 2007 through 2010, Mr. Harrington had interests in foreign accounts in Europe with annual aggregate balances exceeding $10,000. Despite an obligation to timely file FBARs reporting his interests in these foreign accounts for each of these years, Mr. Harrington did not do so. In addition, Mr. Harrington did not report on his 2007 through 2010 federal tax returns income he received from these foreign accounts. Mr. Harrington intentionally failed to disclose his interests in these foreign accounts until the IRS, during an examination of his tax returns, confronted him with evidence of those interests.

13.     In 2013, the IRS began an examination of Mr. Harrington's tax returns beginning with the 2005 tax year. In an interview as part of this examination, Mr. Harrington stated that he had a foreign bank account in New Zealand for which he had timely filed FBARs. He stated that he might have connections to other foreign accounts, but that those accounts were not in his name and that former business associates managed them.

14.     In a later meeting with Mr. Harrington, the IRS presented him with evidence indicating that he and his wife had been beneficial owners of a UBS bank account in the Cayman Islands. The account was under the name "Reed International Ltd.," a logging company that Mr. Harrington previously had managed. The IRS showed Mr. Harrington a letter from Reed International requesting that UBS release the account's assets to Mr. Harrington and his wife after the account's closure in 2007.

15. Only after the IRS presented this evidence to Mr. Harrington did he agree to disclose information regarding the UBS-Cayman account and other foreign accounts to which the UBS account funds had been transferred.

16. Mr. Harrington disclosed that, until 2007, he also had an interest in a Royal Bank of Canada account under the name "Malta Ltd." The account had been used to handle income and expenses related to Eastern Wood Harvesters, another logging business that Mr. Harrington managed.

17. In 2007, funds from both the UBS-Cayman and Royal Bank of Canada accounts were transferred to a new UBS account (ending in 9354) in Switzerland under the name "Ruth Schroder Stiftung." Ruth Schroder Stiftung was a foundation in Liechtenstein. The account's opening documents identify the foundation's founder as "Tremaco Trust" and its board member as "Globaco ag." The foundation's by-laws designate Mr. Harrington and his wife as primary beneficiaries and their children as secondary beneficiaries.

18. At the end of 2009, most of the foundation's funds were transferred to a Valor Life insurance policy (account nos. 58585 and 58585) in Liechtenstein. The policy lists Mr. Harrington and his wife as the policy holders and the insureds, and lists their children as beneficiaries.

19. In February 2014, Mr. Harrington filed amended FBARs, and amended tax returns, covering the 2007 through 2010 years. In these amended FBARs, Mr. Harrington reported, for the first time, his interests in the Royal Bank of Canada, UBS-Cayman, UBS-Switzerland, and Valor Life accounts.

20. On the amended FBARs, Mr. Harrington reported the following highest balances for the UBS-Switzerland and Valor Life accounts during each year from 2007 through 2010:

| Year | UBS (9354) | Valor Life (58585 & 58586) |
|---|---|---|
| 2007 | $1,864,451 | ---- |
| 2008 | $3,249,734 | ---- |
| 2009 | $331,681 | $3,052,964 |
| 2010 | $13,262 | $3,445,225 |

21. For each of these years, the aggregate balance of each of these foreign accounts exceeded $10,000 in U.S. currency.

22. For each of these years, Mr. Harrington did not file, by the applicable deadline, an FBAR reporting his interest in these foreign accounts.

23. Mr. Harrington had actual or constructive knowledge of his obligation to file FBARs reporting his interests in these foreign accounts for each of these years, given that, among other considerations, he filed FBARs reporting his interest in a New Zealand account as early as 2006. Mr. Harrington intentionally failed to timely disclose his interests in the UBS-Switzerland and Valor Life accounts for 2007 through 2010.

24. Each instance of Mr. Harrington's failure to report his interest in each of the foreign accounts listed in Paragraph 20, in a year for which he was required to file an FBAR, constitutes a separate willful violation of the FBAR filing requirements.

## COUNT ONE:
## REDUCE WILLFUL FBAR PENALTIES TO JUDGMENT

25. The United States incorporates by reference the allegations in Paragraphs 1 through 24.

26. By June 30, 2008, Mr. Harrington was required to file an FBAR reporting his interest in the UBS-Switzerland account for 2007. By June 30, 2009, he was required to file an FBAR reporting his interest in the UBS-Switzerland account for 2008. By June 30, 2010, Mr. Harrington was required to file an FBAR reporting his interests in the UBS-Switzerland and

Valor Life accounts for 2009. And by June 30, 2011, he was required to file an FBAR reporting his interests in the UBS-Switzerland and Valor Life accounts for 2012.

27. Under 31 U.S.C. § 5321(b), therefore, the time for the IRS to assess FBAR penalties for these years would have expired, respectively, on June 30, 2014; June 30, 2015; June 30, 2016; and June 30, 2017.

28. On March 14, 2014; January 28, 2015; July 23, 2015; February 26, 2016; and January 13, 2017, Mr. Harrington executed consents to extend the statute of limitations for assessment of these FBAR penalties, ultimately extending the limitations period for all years until March 31, 2018.

29. On October 27, 2017, the IRS timely assessed against Mr. Harrington civil penalties for willful FBAR violations in the following amounts for the following years:

| Year | FBAR penalty |
| --- | --- |
| 2007 | $269,633 |
| 2008 | $469,970 |
| 2009 | $489,481 |
| 2010 | $500,160 |

30. For 2007 and 2008, the FBAR penalty is less than 50% of the high balance in the UBS-Switzerland account for each of those years. For 2009 and 2010, the FBAR penalty allocated to the UBS-Switzerland and Valor Life accounts is less than 50% of the high balance in each account for each of those years.

31. The IRS made the assessments stated in Paragraph 29 pursuant to 31 U.S.C. § 5321(a)(5)(C), which imposes a penalty not to exceed the greater of $100,000 or 50% of the balance in the account at the time of the violation for each willful violation of the FBAR filing requirements in 31 U.S.C. § 5314.

32. On October 31, 2017, the IRS provided Mr. Harrington notice, and demanded payment, of the FBAR penalties for 2007 through 2010.

33. Despite receiving notice and demand for payment, Mr. Harrington has not paid the outstanding FBAR penalties described in Paragraph 29.

34. Pursuant to 31 U.S.C. § 3717(a)(1), the United States is entitled to recover prejudgment interest that has accrued on Mr. Harrington's unpaid FBAR penalties.

35. Pursuant to 31 U.S.C. § 3717(e)(2), the United States is entitled to recover a penalty for Mr. Harrington's failure to pay a lawful debt owed the United States.

36. Pursuant to 31 U.S.C. § 3717(e)(1), the United States is entitled to recover the cost of processing and handling Mr. Harrington's unpaid FBAR penalties.

37. Mr. Harrington is thus liable to the United States for $1,729,244 in willful FBAR penalties for 2007 through 2010, plus $103,663 in interest, failure to pay penalties, and costs of collection, pursuant to 31 U.S.C. § 3717, as of October 3, 2018.

38. The United States is entitled to recover $1,832,907, as of October 3, 2018, plus interest, penalties, and costs accruing from that date.

### COUNT TWO:
### ORDER MR. HARRINGTON TO REPATRIATE ASSETS

39. The United States incorporates by reference the allegations in Paragraphs 1 through 38.

40. Mr. Harrington's known assets located in the United States are insufficient to satisfy the $1,832,907 liability at issue in this case.

41. In January of 2013, the approximately $3 million in Mr. Harrington's Valor Life accounts in Liechtenstein was moved to AGT Bank LG in Liechtenstein.

42. Given that Mr. Harrington owns substantial assets in overseas accounts, which he has moved between different accounts, a repatriation order is appropriate and necessary to collect on Mr. Harrington's significant liability for the FBAR penalties for 2007 through 2010.

43. The Court has the authority to issue such a repatriation order pursuant to the All Writs Act, 28 U.S.C. § 1651, as incorporated in the Federal Debt Collection Procedures Act, 28 U.S.C. § 3202(a).

WHEREFORE, the United States respectfully requests that the Court:

A. Enter judgment in favor of the United States and against Defendant George S. Harrington in the amount of $1,832,907, as of October 3, 2018, plus interest, penalties, and costs accruing from that date;

B. Enter an order requiring Defendant George S. Harrington to repatriate the approximately $3 million in AGT Bank LG in Liechtenstein; and

C. Award the United States its costs in this action and any other relief the Court finds appropriate.

//

//

//

//

Respectfully submitted October 17, 2019.

        RICHARD E. ZUCKERMAN
        Principal Deputy Assistant Attorney General

        */s/ Charles J. Butler*
        CHARLES J. BUTLER
        Trial Attorney, Tax Division
        U.S. Department of Justice
        P.O. Box 683
        Washington, D.C.  20044
        202-514-6062
        202-307-0054 (Fax)
        Charles.J.Butler@usdoj.gov

        *Of Counsel*
        JASON R. DUNN
        United States Attorney

        *Attorneys for the United States of America*