IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:19-cv-02965-SKC-JPO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MONICA HARRINGTON, as Personal
Representative of the Estate of George
Harrington, and MONICA HARRINGTON,
individually,

    Defendants.

## UNITED STATES' BRIEF ON REPATRIATION AUTHORITY

The United States submits this brief pursuant to the Court's Order of February 28, 2024 (Dkt. 111).

The Federal Debt Collection Procedures Act (FDCPA), 28 U.S.C. §§ 3001, *et seq.*, and the All Writs Act, 28 U.S.C. § 1651, provide the United States powerful tools to collect money judgments. In this case, unless the United States reaches agreement with Defendant Monica Harrington to satisfy the Court's judgment against Defendant George Harrington (now against his estate) on his willful FBAR violations, it must employ these tools to collect that judgment.

George Harrington's estate has no domestic assets of value to pursue under the FDCPA. But, as this Court determined, the estate does have assets in an account in Vontobel Holding AG in Switzerland sufficient to pay the judgment. This Court has no jurisdiction over assets held overseas; FDCPA remedies thus cannot reach such assets. The Court, however, has jurisdiction over George Harrington's estate and over Monica Harrington. As explained below, the Court

thus has authority, under the All Writs Act, to direct Monica Harrington to repatriate assets in the Vontobel account in an amount sufficient to satisfy the judgment against George Harrington's estate. And only after the assets are repatriated to this country would the FDCPA collection provisions come into play. If the repatriated assets are "co-owned" assets under the FDCPA, therefore, the law of the state in which the repatriated assets are located would determine the extent of each co-owner's interest in the assets.

**Background**

In its amended complaint, the United States asserted three claims for relief. Count 1 sought judgment for FBAR penalties against George Harrington totaling $1,832,907, as of October 3, 2018 (plus interest, penalties, and costs accruing from that date), for willfully failing to report his interest in Swiss accounts in 2007 through 2010.[1] Count 2 sought a determination that George Harrington's transfer of his interest in approximately $2.7 million in Valor Life accounts to his wife, Monica Harrington, was fraudulent under 28 U.S.C. § 3304. And Count 3 sought an order directing George and/or Monica to repatriate these foreign held assets, which are in an account in Vontobel Holding AG in Switzerland, in an amount sufficient to satisfy a judgment against George.

On September 15, 2022, the United States moved for summary judgment on Counts 1 and 2 of the amended complaint.[2] (Dkt. 74.) On February 28, 2024, the Court granted the United States summary judgment on both counts. (Dkt. 111.) The Court further directed the parties to

---

[1] As of April 17, 2024, the balance owed is $2,511,152.53.

[2] The United States did not move for summary judgment on Count 3 because it sought first to obtain a judgment before pursuing a remedy to enforce the judgment under 28 U.S.C. § 3202(a). As explained below, the United States intends to file a separate motion seeking the repatriation order, unless the parties first reach agreement on satisfying the judgment.

file simultaneous 10-page briefs on the following issues related to Count 3 of the amended complaint: (1) this Court's authority to order a United States citizen to repatriate assets held in a foreign country; and (2) which jurisdiction's law applies under 28 U.S.C. § 3010(a) when the assets at issue are located in a foreign country, as opposed to a U.S. state.

To preserve the assets at issue to satisfy a judgment in this case, the United States earlier brought a separate action against Monica Harrington for injunctive relief. In that action, this Court issued an order directing that, pending execution of the final judgment in this case, Monica Harrington (1) may not encumber or dispose of the assets in the Vontobel account; (2) must file monthly reports reflecting the account's balance; and (3) may not travel outside the United States. *See United States v. Monica Harrington*, No. 1:21-cv-01601-RBJ (Dkt, 16, Dec. 6, 2021). As part of that separate case, the United States submitted the Declaration of IRS Supervisory Revenue Agent Galo Grau (No. 1:21-cv-01601-RBJ, Dkt. 1-2). RA Grau stated that, through the IRS's earlier examination of George Harrington, the IRS had determined that George essentially had no domestic assets. He did not own real property in the United States. His only U.S. asset was a bank account with a balance of about $15,000. *See* No. 1:21-cv-01601-RBJ, Dkt. 1-2, ¶ 10.

Likewise, through discovery in this case, George and Monica Harrington claimed that George had no assets of value in this country. The only domestic assets with a value over $500 that George identified are (1) household furniture, (2) abandoned logging machinery, (3) an abandoned sailboat, and (4) a 1996 Toyota Camry. *See* Dkt. 71-42 (G. Harrington Resp. to Int. 18). In addition, Monica has paid all of the couple's expenses since 2013. *See* Dkt. 71-3 (M. Harrington Dep. II 23:18–24:1). And the Grand Junction house where George lived with Monica is titled in their daughter's name, while their son pays the mortgage on it. *See id.* (Harrington

Dep. II 20:17–21:8.) Neither George nor Monica identified a domestic financial account holding assets of George with a value over $500.

## Discussion

Because the only assets of value the Harringtons identified are the funds in the Swiss Vontobel account, the United States cannot use the FDCPA to collect the judgment against George Harrington until those assets are repatriated. As explained below, without question, the Court has authority to order the repatriation of assets in an amount sufficient to satisfy the full judgment against George. Only after the assets are repatriated would issues related to co-ownership – if any – arise.

### A. The FDCPA authorizes courts to exercise jurisdiction over domestic assets to satisfy federal debts.

The FDCPA provides the "exclusive civil procedures" for the United States to recover on judgment debts. 28 U.S.C. § 3001(a); *see also United States v. Badger*, 818 F.3d 563, 573 (10th Cir. 2016). Under the FDCPA, the Court may enforce a judgment through the remedies listed in Subchapter C (§§ 3201-3206). *See* 28 U.S.C. § 3202(a). Also, under § 3202(a), if necessary to support any of these remedies, the Court may issue a writ under the All Writs Act, 28 U.S.C. § 1651.

One such remedy is a writ of garnishment. Under the FDCPA, property in which the judgment debtor has a substantial non-exempt interest that is in the custody of another person is subject to a writ of garnishment. *See* 28 U.S.C. § 3205; *Goodson v. Brennan, Postmaster General*, No. 15-cv-01515, 2019 WL 2913348, at *2 (D. Colo. July 8, 2019) ("Among other things, the FDCPA allows the United States to garnish property in the hands of third parties to enforce a judgment debt."). When served with a writ of garnishment, the holder of the property generally must turn it over to the United States for satisfaction of the judgment debt. *See* 28

4

U.S.C. § 3205(c)(7) (requiring courts to enter a disposition order "promptly" if the garnishee does not request a hearing or within five days of holding a requested hearing); *United States v. Gorshe*, No. 1:20-mc-00042, 2020 WL 5905358, at *2 (E.D. Cal. Oct. 6, 2020) (judgment debtor's "interest in the bank accounts in the custody of the Garnishee are property as defined under the FDCPA and are therefore subject to garnishment") (adopted by No. 1:20-mc-00042, 2020 WL 6392581 (E.D. Cal. Nov. 2, 2020)); *United States v. Diaz Landa*, No. 1:18-mc-00020-DAD-BAM, 2019 WL 3026993, at *2 (E.D. Cal. July 11, 2019) ("Pursuant to 28 U.S.C. § 3205(c)(7), as no hearing was requested during the applicable time period, the Court must enter an order directing the Garnishee as to the disposition of the bank accounts."). Under the FDCPA, property "includes any present or future interest . . . wherever located and however held (including community property and property held in trust)." 28 U.S.C. § 3002(12).[3]

Because garnishment proceedings are *quasi in rem*, however, a district court lacks subject matter jurisdiction to issue writs of garnishment with respect to property located outside the court's jurisdiction. *See*, *e.g.*, *Inversiones Y Procesadora Tropical Inprosta, S.A. v. Del Monte Int'l GMBH*, No. 16024275, 2020 WL 6384878, at *4 (S.D. Fla. Aug. 5, 2020) (district court in Florida could not garnish accounts in Costa Rica pursuant to Fed. R. Civ. P. 69(a)(1) and Florida garnishments statutes; but, as general matter, because the court had personal jurisdiction over a party, it could order that party to turn over property located outside its jurisdiction). The FDCPA, for instance, provides that any writ, order, judgment, or other process under the statute "may be

---

[3] The FDCPA's definition of "property" tracks the definition of "property" under the bankruptcy code. The bankruptcy code defines property of the estate to include "property, wherever located and by whomever held." 11 U.S.C. § 541(a). Bankruptcy courts have held that property held abroad by a debtor is subject to a repatriation order. *See, e.g.*, *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, No. 6:03-BK-00299, 2011 WL 3585827, at *2-*4 (Bankr. M.D. Fla. Jul. 28, 2011).

served in any State." 28 U.S.C. § 3004. The statute defines "State" as "any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, or any territory or possession of the United States." 28 U.S.C. § 3002(14). And the statute requires that the United States serve writs of garnishment on the garnishee and judgment debtor. *See* 28 U.S.C. § 3205(c)(3). Accordingly, if the garnishee is not located in a "State," the writ of garnishment cannot be served and executed.

Thus, George Harrington's assets within Colorado would be subject to garnishment or other collection action were the United States to apply to this Court for the appropriate writ or order under the FDCPA. As noted above, however, George's estate has no domestic assets sufficient to satisfy the judgment against him. To collect the judgment, therefore, the United States must seek an order under the All Writs Act to pursue repatriation of the estate's foreign-held assets.

    **B. This Court has the authority to order repatriation of foreign assets in aid of collection on a judgment owed to the United States.**

A district court has inherent authority to enforce its judgments, including money judgments. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.") (internal quotes omitted); *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005) ("[A] district court has inherent authority to ensure that prevailing parties are able to enforce prior judgments."). Consistent with this principle, under the FDCPA, district courts "may issue other writs pursuant to [the All Writs Act], as necessary to support such remedies" available under the FDCPA. 28 U.S.C. § 3202(a). The All Writs Act, in turn, empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). This authority includes

the power to order judgment debtors to repatriate foreign assets. *See United States v. Kelly*, No. 21-12570, 2023 WL 6973872, at *5 (E.D. Mich. Oct. 23, 2023) (granting the United States' motion to repatriate foreign assets to collect FBAR judgment); *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978) (ordering defendant to repatriate lottery winnings held in secret offshore account to satisfy judgment).

Indeed, "there appears to be little hesitation on the part of courts to issue such orders." *McNulty*, 446 F. Supp. At 92. Courts have routinely ordered repatriation of foreign assets where a judgment debtor maintains large amounts of money or assets abroad and has insufficient domestic assets to satisfy the judgment. For example, in *United States v. Ross*, a tax lien enforcement action, the court ordered the defendant to transfer stock certificates located in the Bahamas to a court-appointed receiver. 196 F. Supp. 243 (S.D.N.Y. 1961), *aff'd*, 302 F.2d 831 (2d Cir. 1962). In doing so, the court stated, "Only for the most compelling reasons should a court refuse relief to the Government where a citizen of the United States keeps most of his assets in a foreign country and claims that they are immune from application to his income tax liability because of their situs in a foreign country." *Id.* at 245-46. Affirming this decision, the Second Circuit observed that "[p]ersonal jurisdiction gave the court power to order Ross to transfer property whether that property was within or without the limits of the court's territorial jurisdiction." *Ross*, 302 F.2d at 834; *see also Fed. Trade Comm'n v. Affordable Media*, 179 F.3d 1228, 1232 (9th Cir. 1999) (affirming order of contempt after judgment debtors failed to repatriate funds in Cook Islands trust); *Sec. Exch. Comm'n v. Aragon Cap. Advisors, LLC*, No. 07-919-FM, 2011 WL 3278907, at *9 (S.D.N.Y. July 26, 2011) (repatriation order was "reasonable and appropriate to ensure that [the judgment debtor's] assets can be brought under the Court's control" to satisfy judgment).

As *Affordable Media*, *Aragon*, and other cases make clear, courts' use of repatriation orders is not limited only to tax judgments. In *United States v. Schwarzbaum*, for instance, the court ordered a judgment debtor to repatriate funds held in Switzerland to satisfy a $15 million willful FBAR judgment. No. 18-cv-81147, 2021 WL 4958307, at *3 (S.D. Fla. Oct. 26, 2021). The court found the statutory language of the All Writs Act analogous to the tax code provisions the courts in *Ross* and *McNulty* had cited, prior to the FDCPA's enactment, in ordering repatriation in those cases. The *Schwarzbaum* court determined it had authority to order repatriation given the express "incorporation of the All-Writs Act [into the FDCPA] to support and supplement the express enumerated post-judgment remedies of garnishment and execution" and based on its personal jurisdiction over the judgment debtor. *Id.* at **3-4. The court also observed that a writ of garnishment or execution would be fruitless without first requiring the judgment debtor to repatriate his offshore funds. *Id.* at *5.[4]

Likewise, in *United States v. Kelly*, the court granted the United States' motion for an order directing the defendant to repatriate offshore funds to pay a willful FBAR judgment. No. 21-12570, 2023 WL 6973872 (E.D. Mich. Oct. 23, 2023). The court noted that any assets the defendant owns within the Court's territorial jurisdiction would be subject to execution or garnishment under the FDCPA. But collecting on such assets would be futile given that, in discovery responses, the defendant had not identified domestic assets that could satisfy the

---

[4] In *Schwarzbaum*, the court vacated its repatriation order following the Eleventh Circuit's order directing remand to the IRS solely for recalculation of the FBAR penalties. *See United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022). After the administrative remand, the district court entered a modified judgment and again ordered repatriation. *United States v. Schwarzbaum*, No. 18-cv-81147, 2023 WL 2682296 (S.D. Fla. Mar. 28, 2023). In doing so, the court stated that it "has already held that the funds in question need not have been in the United States in order to be subject to a repatriation order" and that "the Court has also rejected Defendant's argument that repatriation is generally only applicable to collect on outstanding tax liabilities." *Id.* at *5.

judgment. *Id.* at *4 & n.2. The court thus turned to its inherent authority to enforce judgments and the FDCPA's incorporation of the All Writs Act to aid in enforcing and collecting on judgments. Based on that authority, the court determined it could order the defendant to repatriate assets held in Liechtenstein in an amount sufficient to pay the FBAR judgment. *Id.* at **4-5.

Without question, therefore, this Court possesses the authority to order repatriation here. The Court has inherent authority to enforce its judgment against George Harrington for willful FBAR penalties. The FDCPA's express incorporation of the All Writs Act further empowers the Court to issue writs necessary to support FDCPA collection remedies, to include issuing a repatriation order. Such an order is necessary given that George Harrington's estate lacks domestic assets to satisfy the judgment. And, as this Court has determined, George Harrington fraudulently transferred his interest in significant assets to Monica Harrington, who put them in a Swiss account to shield them from collection. Only through an order directing the repatriation of funds in an amount sufficient to satisfy the judgment can the Court enforce that judgment.

**C. The FDCPA's collection provisions would apply only after the assets are repatriated to this country.**

As explained above, the Court has no jurisdiction over assets held overseas. *See generally S.E.C. v. Aragon*, 2011 WL 3278907, at *9 (repatriation order was necessary to bring overseas assets "under the Court's control"). While George Harrington's assets remain in Switzerland, therefore, the Court has no direct jurisdiction over them. The FDCPA's collection provisions thus cannot apply to the foreign-held assets. The Court has identified one such provision, 28 U.S.C. § 3010(a), which provides, essentially, that the extent of a debtor's interest in "co-owned" assets should be determined under the law of the U.S. state where the assets are located. This

provision would not apply to George Harrington's assets so long as they are in Switzerland. The statute itself makes this clear, given that it does not address assets located in foreign countries.

Again, however, the statute does incorporate the All Writs Act, which empowers the Court to order repatriation of the foreign-held assets. Following repatriation, when the assets are within the Court's jurisdiction (i.e., sitting in the Court's registry), the FDCPA's collection provisions would apply to them. Accordingly, after George Harrington's assets in the Vontobel account are repatriated in an amount sufficient to satisfy the judgment against him, if those assets are "co-owned" under the FDCPA, the Court would then determine the extent of George Harrington's interest in the assets based on relevant state law.

## Conclusion

The United States intends to move for entry of a judgment against George Harrington's estate reflecting the current balance owed on the FBAR penalties (approximately $2.5 million), plus statutory amounts that continue to accrue, based on the Court's summary judgment decision. In addition, the United States intends to move for an order directing the estate and Monica Harrington to repatriate assets from the Vontobel account in an amount sufficient to satisfy that judgment.

It may be, however, that the parties can agree on a means for the defendants to satisfy the judgment against George Harrington, which could obviate the need for a repatriation order. Counsel for the United States and for Monica Harrington have begun discussions on that issue. To provide an opportunity for the parties to continue these discussions, and for the United States's counsel to obtain approval for any such agreement, the United States proposes that, by May 31, 2024, either (1) the United States file a motion for repatriation order or (2) the parties submit a status report on any agreement to resolve satisfying the judgment.

| | |
|---|---|
| Dated: April 26, 2024 | DAVID A. HUBBERT<br>Deputy Assistant Attorney General<br><br>*/s/ Charles J. Butler*<br>CHARLES J. BUTLER, Assistant Chief<br>MATTHEW P. UHALDE, Trial Attorney<br>Tax Division, U.S. Department of Justice<br>P.O. Box 683, Washington, D.C. 20044<br>Telephone: (202) 514-6062<br>Fax: (202) 307-0054<br>Email: Charles.J.Butler@usdoj.gov<br><br>*Attorneys for the United States* |

**Certificate of Service**

I certify that on April 26, 2024, I filed the foregoing via CM/ECF, which will provide notice to all parties that have appeared.

_/s/ Charles J. Butler_
Assistant Chief, CTS-W
Tax Division, U.S. Department of Justice
