IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:19-cv-2965

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GEORGE S. HARRINGTON and MONICA HARRINGTON,

    Defendants.

_____

**BRIEF REGARDING COUNT 3 OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
_____

    Defendants Monica Harrington, as the court-appointed Personal Representative of the Estate of George Harrington, and Monica Harrington, individually, by and through undersigned counsel, hereby submits this brief regarding Count 3 of the United States of America's (Government) Motion for Summary Judgment (MSJ) as ordered by the Court in its Order on Plaintiff's Motion for Summary Judgment (Dkt. 111).

    In its Order, the Court granted the relief requested by the Government in its Motion for Summary Judgment as to Counts 1 and 2 of the First Amended Complaint (FAC) (Dkt. 50). The Court requested additional briefing on two issues not specifically raised in the Government's MSJ, but alleged in the First Amended Complaint (FAC) in Count 3.

1

First, the Court asked the parties to address whose law applies under 28 U.S.C. § 3010(a) when property is located in no "State" because it is located in a foreign country.

Second, the Court asked the parties to address whether the Court has the authority or lacks the authority to order a United States citizen to repatriate funds held in a foreign country. Within its Order, the Court also indicated that it could not determine, based on the briefing, if it could order repatriation of the funds at issue in this case, whether that order should be for 50%, 100%, some other amount, or anything at all.

Monica, as Personal Representative and individually, addressed each issue in turn, taking the second question first.

### A. The United States Cannot Avail Itself of the Fair Debt Collection Procedure Act (FDCPA) For Property Held in Switzerland

The Court asked the parties to address whose law applies under 28 U.S.C. § 3010(a) when property is located in no "State" because it is located in a foreign country. The Court's question presumes the Government can utilize the FDCPA to reach property held in a foreign country. The FDCPA provides no such relief for the Government.

The FDCPA creates a comprehensive and uniform statutory framework for the collection of federal debts. *U.S. v. Badger*, 818 F.3d. 563, 573 (10th Cir. 2016). The FDCPA's plain language leaves no doubt that the FDCPA "provides the exclusive civil procedures for the United States to recover a judgment on a debt," unless another Federal law specifies another procedure 28 U.S.C. 3001(a)(1) & (b).

2

As this Court observed, Section 3010(a) of the FDCPA makes remedies available to the United States under the FDCPA enforceable against property co-owned by a debtor and another person only to the extent allowed by "the law of the State where the property is located." 28 U.S.C. 3010. The Court further noted that, "it strikes the Court that Section 3010 requires examining the laws of Switzerland (or potentially, Lichentenstein) to determine whether the Government can seek recovery of George's FBAR penalty from the Vontabel account." *See* MSJ Order, p. 31 (Dkt. 111). The reach of the FDCPA is not that far.

A "State" is defined under the FDCPA as "any of the several States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Marianas, or any territory or possession of the United States." 28 U.S.C. 3002. The Act goes on to define "debt" as "an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States." 28 U.S.C.A. § 3002(3)(B). A "debt" owed to the United States for federal taxes or tax-related penalties fits within the definition therefor under the FDCPA.

However, the reach of the FDCPA does not extend to foreign countries, which are not included within the definition of debt under the Act. This is consistent with the purpose of the FDCPA, which was to create a uniform system for the United

3

States to collect federal debts, as opposed to piecemeal collections under laws of the various *states*. *Badger*, 818 F.3d at 573.

Given this, the United States may not exercise direct collection under the FDCPA of George's FBAR penalties from the Vontabel account in Switzerland.

### B. Whether This Court Has Authority to Order a United States Citizen to Repatriate Funds Held in Another Country

The Court next asked the parties to address whether the Court has the authority, or lacks the authority, to order a United States citizen to repatriate funds held in a foreign country. Further, according to the Court, if it could order repatriation of the funds, the Court questioned whether that order should be for 50%, 100%, or some other amount, if anything, of George's FBAR penalties.

The Government prayed for 4 forms of relief within its motion for summary judgment: (1) a finding of willful failure to report by George; (2) a finding that the IRS properly exercised its discretion in assessing the FBAR penalty against George; (3) a judgment against George in the amount of $1,729,244.44 plus interest and statutory accruals; and (4) a finding that a purported transfer of $2,789,230.92 to Monica was fraudulent and to set aside that transfer. *See* Government's MSJ, p. 25 (Dkt. 71).

The Government did not move for summary judgment on Count 3, the repatriation or remittance count, and the Court found the parties failed to address in briefing. See Government's MSJ, generally, (Dkt. 71). While Monica does not dispute the Government seeks repatriation or remittance in Count 3, she also contends such a ruling is premature based on the Government's MSJ as filed. Instead, Monica

4

contends, the Court has taken the action requested by the Government in its MSJ, and the Court should do no more on the existing record.

In Count 3, the Government seeks repatriation of the Vontabel accounts from George. George is now deceased so, presumably, the Government asks Monica to repatriate the funds as his Personal Representative, even though, oddly, they also challenge her standing as such. *See* Reply to Defendant Monica Harrington's Response to the United States' Motion for Summary Judgment, p. 5-6 (Dkt. 91). In any case, the Government contends this Court has authority to enter such an order pursuant to the FDCPA and the All Writs Act. Importantly, that issue is separate from any rights Monica has to appeal the Court's underlying MSJ Order and by addressing this issue, she is not intending to, nor does she waive, any issues that may be raised on appeal regarding the underlying order or the ripeness of repatriation for determination at this stage.

In addition to the FDCPA, the Government requests that this Court order repatriation pursuant to the All Writs Act. 28 U.S.C.A. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.") SC FAC ¶ 49 (Dkt. 50).The Government has not asked for the appointment of a receiver.

The Government requests an "extraordinary remedy." *Penn. Bureau of Correction v. U.S. Marshal Service*, 474 U.S. 34, 42 (1985). This Court may only exercise its authority under the All Writs Act "as may be *necessary or appropriate* to

effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction of otherwise obtained." *Id.* at 40 (emphasis added). There is a "dearth of case law regarding the interplay between the FDCPA and the All Writs Act." *United States v. Schwarzbaum*, 2021 WL 4958307, at *4 (S.D. Fla. Oct. 26, 2021)(not cited in F.Supp.). Importantly, "[a] federal court has the power to order a defendant over whom it has personal jurisdiction 'to transfer property whether that property [is] within or without the limits of the court's territorial jurisdiction.' *S.E.C. v. Kirkland*, 2007 WL 724886, at *2 (M.D. Fla. Feb. 28, 2007)[internal citations omitted]. Significantly, though, "[s]uch an order is effective against the defendant 'provided such act is *not contrary to the law of the state in which it is to be performed.*' " *Id. S.E.C. v Kirkland* involved property that was located in in Scotland. *Id.* at *1. There is no evidence whatsoever in this case, by expert testimony or otherwise, whether the laws of Switzerland or Liechtenstein or would be contrary to a repatriation order entered in this case. *See, e.g. Livingstone v. Livingstone,* 2023 WL 8524922, at *5 (10th Cir. Dec. 8, 2023)(not cited in Fed.Rptr.)("expert testimony accompanied by extracts from foreign legal materials has been and will likely continue to be the most basic mode of proving foreign law" (citing *Ogawa v. Kang*, 2018 WL 2376338, at *1 (D. Utah May 24, 2018), *aff'd* 946 F.3d at 1177 (Japanese law).) Plainly, without *any* evidence (expert or otherwise) about the laws of Switzerland or Leichtenstein, and whether those laws may be contrary to a broad repatriation order, such as the one the Government has asked this Court to enter, the Court lacks the authority to order repatriation in the fashion requested.

This Court entered judgment on Counts 1 and 2 of the FAC. There have been no collection efforts by the Government on the judgment against George. As this Court wrote in fn. 21 of the MSJ Order, "[t]he Court also notes that the Government is silent about whether it has tried to attach any of George's other assets." MSJ Order, p. 32, fn. 21 (Dkt. 111). And yet, the Government requests the Court leap to the extraordinary step of ordering repatriation, even though the Government has not attempted to exercise any other remedy statutorily available to it within the plain language of the FDCPA.

The pleadings do not admit that he doesn't have sufficient other funds and I'm not sure the affidavits do, either.

### C. If This Court Determines It May Order Repatriation of the Vontabel Funds, Only Half of the Funds Should be Subject to Repatriation

Monica contends that any amounts available to the Government to satisfy the Court's judgment are limited to 50% of the previously jointly owned Vontabel funds that would be subject to garnishment under Colorado law once the funds would be repatriated back to Colorado.

"As between parties married to each other, in absence of proof otherwise, the net contribution [to an account] is presumed to be an equal amount." C.R.S. 15-15-211(2). "An account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." C.R.S. § 15-15-211(2). Thus, there is a presumption Monica and George's former interest in the Vontabel funds is 50/50 each. As this Court noted, in *United States v. Silverman*, 2019 WL 6799160, at *14 (D. Colo. Dec. 13, 2019), the District

7

Court held that, based upon Colorado law, only half of a joint account was subject to garnishment for the obligation or debt of the only one spouse. When property is held in joint tenancy, and one joint tenant conveys his or her interest in the property to the other joint tenant, it is only a conveyance of one-half of the formerly jointly owned joint property. *See, e.g., generally*, United States v. Morgan, 554 F. Supp. 582, 584 (D. Colo. 1982). In *Morgan*, a case in which spouses jointly held real property near Golden, Colorado, the Court analyzed *only* whether a conveyance of formerly jointly-owned property was indeed a fraudulent conveyance of the grantor spouse's one-half interest in the property to the other spouse. The issue of whether the transfer of the entire corpus of the asset was fraudulent was not even briefed or argued, because it appears, at least to that Court, that the conveyance could only have been as to one-half of the property. A similar principle should apply in this case.

As the Court noted in its MSJ Order, the Government, "does not seek to hold Monica liable for the FBAR penalties against her husband. Nor does it seek to garnish her separate property to pay a judgment against him. Rather, the United States seeks a determination that funds in a bank account solely in Monica's name belong equally to George" MSJ Order (Dkt. 111, p. 23).

The Court found in its MSJ Order that funds originally jointly titled in both George and Monica's names and then transferred into only Monica's name was a fraudulent transfer by George. MSJ Order (Dkt. 111, p. 24). While the Vontabel funds remain in Monica's name, the Court ordered that the transfer be set aside as a

fraudulent conveyance and, thus, Monica concedes based upon the Court's MSJ Order, the funds are joint funds for purposes of this supplemental briefing.

At the time this action was brought, George and Monica resided in Grand Junction, Colorado. FAC (Dkt. 50 ¶¶ 6 & 8); George's Answer to First Amended Complaint (Dkt. 53 ¶¶ 6 & 8); Monica's Answer to First Amended Complaint (Dkt. 54 ¶¶ 6 & 8). George died in Grand Junction, Colorado on January 16, 2023. Suggestion of Death (Dkt. 97 and Ex. A). George's FBAR penalties survive his death. *United States v. Green*, 457 F. Supp. 3d 1262, 1272 (S.D. Fla. 2020).

The Government contends all of the funds should be subject to execution because, after the fraudulent conveyance is set aside, the funds are George and Monica's separately, that is, there is no separate property interest. That places the Government in a better position than Colorado law provides. Likewise, Monica could take the absurd position that the Court could order repatriation of the full amount necessary to satisfy the judgment; however, once repatriated, only one-half of the proceeds would be subject to execution to satisfy the judgment. A windfall to Monica.

Instead, the Court should be prudent in exercising its authority to order repatriation and determine that because the Court is gaining jurisdiction of the funds through the process of repatriation, that only one-half of the funds should be available to satisfy the Government's judgment against George. Indeed, if Monica withdrew, and subsequently transferred, the whole of the funds to Colorado, one half would be the limit of the Government's ability to garnish under Colorado state law.

## Conclusion

WHEREFORE, Monica respectfully requests this Court deny summary judgment on Count 3 of the Government's FAC. To the extent the Court disagrees, then Monica prays that any order for repatriation be for one-half of the balance of the Vontabel funds, subject to the automatic stay.

Dated: April 26, 2024

/s/ Sam D. Starritt
Sam D. Starritt
744 Horizon Court, Suite 300
Grand Junction, CO 81506
970-241-5500
starritt@dwmk.com

*Counsel for Defendant Monica Harrington*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I filed the foregoing using the CM/ECF system, which will provide notice to all parties that have appeared.

CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C.  20044
202-514-6062 | 202-307-0054 (Fax)
Charles.J.Butler@usdoj.gov
*Counsel for the United States of America*

By: */s/ Sam D. Starritt*
Sam D. Starritt